UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

In the Matter of NIR,
minor child under the age of 16,

GÁBOR ZSOLT MOHÁCSI,

                Petitioner,

-against-

ISABELLA SOFIA RIPPA,

                Respondent.

Case No. **CV 18-2563**

**KUNTZ, J.**

**LEVY, M.J.**

## PETITION FOR RETURN OF CHILD
## TO HUNGARY UNDER THE HAGUE CONVENTION

The Convention on the Civil Aspects of International Child Abduction,
Done at the Hague on October 25, 1980
International Child Abduction Remedies Act, 42 U.S.C. 11601, *et seq.*

### PREAMBLE

The action before the Court arises out of the abduction of ▄▄▄▄▄▄▄▄ ("NIR"), a three-year old child from Hungary—his place of habitual residence—who continues to be wrongfully retained in the United States. Without warning, Isabella Sofia Rippa, the Respondent, wrongfully removed NIR from Hungary during the pendency of a paternity proceeding, which has been since resolved in favor of the boy's father, Gábor Zsolt Mohácsi, the Petitioner. In doing so, the Respondent flouted both the jurisdiction of the Hungarian court and the Petitioner's custody rights. Petitioner requests that this Court order the immediate return of his son, NIR, to Hungary, so as to restore the Hungarian court's rightful jurisdiction over this matter and so that the Petitioner can exercise his parental rights.

This Petition is brought pursuant to the Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89 (the "Convention"), and the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11603(b). The Convention came into effect in the United States on July 1, 1988 and was also ratified between the United States and Hungary on July 1, 1988.

For the convenience of the Court, copies of the Convention and ICARA are annexed hereto as Exhibits A and B, respectively.

The objects of the Convention are:

Article 1(a): to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and

Article 1(b): to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.

## JURISDICTION

This court has jurisdiction pursuant to 42 U.S.C. § 11603(a).

A decision by this Court is not a determination of the custody of the child but only a determination of whether to return NIR to his habitual residence, Hungary, where the courts of Hungary may decide custody.

## STATUS OF PETITIONER AND CHILD

The Petitioner at the time of this application to this Court, is a habitual resident and citizen of Hungary. Petitioner is a professional photographer, and currently supports his two other children in Hungary.

The Respondent, upon information and belief, is a citizen of Hungary and currently resides in the United States without legal immigration status. She has consistently

sought to unlawfully thwart Petitioner's paternal rights, most recently by absconding from the jurisdiction of Hungary with Petitioner's child.

The Petitioner and Respondent are the parents of NIR. NIR was born in Budapest, Hungary on September 19, 2014 and is a Hungarian citizen. *See* Extract from the Register of Births for NIR, attached hereto as Exhibit C. Upon information and belief, NIR lived in Hungary continuously until the Respondent wrongfully removed him from Hungary to the United States.

Before the couple became pregnant with NIR, Petitioner and Respondent lived together as life partners for roughly two years in Budapest, Hungary. After becoming pregnant with NIR, Respondent acknowledged that Petitioner was NIR's father and Petitioner and Respondent continued to live together with an expectation to raise NIR in Hungary together.

Late in the pregnancy, following an argument, Respondent moved out of their home, and thereafter declined to acknowledge Petitioner's paternity of NIR, as she had previously. After NIR was born, Respondent also refused to allow Petitioner any access to his son, who he has yet to meet. NIR and the Respondent "habitually reside[d] at 1144 Budapest, Szentmihályi út 3/B. I/3" following the birth of NIR. *See* Order of Pest Central District Court (Pesti Központi Kerületi Bíróság), at 3, dated June 16, 2016 ("June 16, 2016 Order"), attached hereto as Exhibit D.

Shortly after NIR's birth in late 2014, Petitioner instituted a paternity suit in Hungary to confirm his status as the father and exercise his parental rights. Petitioner provided a witness to prove his paternity and responded to summons for DNA tests. *See* Ex. D. Respondent made a declaration at the outset of the paternity procedure indicating that she would appear and

make a statement, however when the court held evidentiary hearings it noted that she failed to appear. *Id.*

In fact, Respondent repeatedly flouted the authority of the Hungarian court. Despite being informed by the court that the burden was on Respondent to prove that Petitioner was not the father – due to the cohabitation and "conjugal link" between Petitioner and Respondent during the conception period – Respondent repeatedly failed to appear when summoned by the Hungarian court. *Id.* A summons for forensic testing "was returned as 'did not appear' on many occasions" for Respondent, preventing the completion of DNA testing. *Id.* Only the Petitioner appeared for such DNA tests. *Id.* In addition, the Hungarian court also ordered that a police search be conducted for Respondent and NIR. *Id.* However, although the Hungarian police determined that Respondent and NIR habitually resided in Budapest, Hungary, they were not able to summon her to appear in court. *Id.*

Despite Respondent's flouting of the Hungarian court's summons and orders, Petitioner's paternity and parental rights were confirmed by the Hungarian court on June 16, 2016, which declared Petitioner as the father of NIR under Hungarian law. *Id.* Petitioner has consistently sought to contribute to the costs and responsibilities of raising NIR, notwithstanding the obstacles put up by Respondent and her wrongful frustration of his rights as NIR's father.

After the Hungarian court resolved the paternity dispute in Petitioner's favor on June 16, 2016, Petitioner learned that Respondent had wrongfully removed NIR to the United States, possibly during the pendency of the Hungarian court proceedings. Neither Petitioner nor the Court was informed of Respondent's decision to take NIR out of Hungary. Needless to say, Petitioner did not consent to NIR's removal. Petitioner thereafter initiated proceedings to attempt to bring NIR back to Hungary. Notwithstanding his wrongful removal to the United

States, NIR has at all times been a native-born Hungarian citizen, and Hungary continues to be NIR's habitual residence.

Petitioner requested NIR's return to Hungary pursuant to his Request for Return of a Child Wrongfully Removed Abroad ("Request for Return"), a copy of which is attached hereto as Exhibit E. The Request for Return has been filed with the United States Department of State, which acts as the Central Authority for the United States.

Petitioner's Request for Return was completed on or about October 1, 2017. Due to the difficulty of securing legal representation in the United States without sufficient resources or the ability to communicate proficiently in English, the undersigned counsel were not formally retained until on or about April 16, 2018.

The Convention applies when a child under the age of sixteen is removed or retained from his habitual residence in breach of the custodial rights of a parent who was exercising such rights at the time of the wrongful removal or retention, or would have been so exercised but for the removal or retention. *See* Convention, art. 3, Ex. A.

Both the removal and the continuing retention of NIR in the United States is a violation of Petitioner's rights as NIR's father under Hungarian Law. Petitioner has a right of custody of the child, NIR, within the meaning of Articles Three and Five of the Convention in that he is NIR's natural father and a custodial parent under the laws of Hungary. *See* June 16, 2016 Order, Ex. D; Certificate of Law from Dr. Zoltán Németh, Department Head, Hungary Ministry of Justice (March 2017) ("Certificate of Law"), attached hereto as Exhibit F.

At all times prior to and since NIR's wrongful removal to the United States by Respondent, Petitioner has maintained and sought to exercise custody over NIR within the

meaning of Articles Three and Five of the Convention. Respondent continues to wrongfully retain NIR in the United States in violation of Petitioner's rights of custody.

Upon information and belief, Respondent and NIR currently reside at 1281 Jefferson Avenue in Brooklyn, New York.

The Convention is intended to deter parents from engaging in international forum shopping and to prevent the frustration of a foreign court's authority to determine custody issues of its habitual residents.

Upon information and belief, Petitioner fears that Respondent will attempt to flout the jurisdiction of this Court and remove NIR from the United States to Mexico.

## WRONGFUL REMOVAL OF THE CHILD BY RESPONDENT

Petitioner and Respondent lived together in Budapest, Hungary from 2012 to 2014. NIR was born on September 19, 2014.

In 2014, Petitioner applied for and thereafter obtained judicial recognition of his custody rights in the Pest Central District Court located in Budapest Hungary.

Any change to NIR's residence requires Petitioner's agreement pursuant to Hungarian Civil Code Article 4:152 §§ 5-6. *See* Certificate of Law, Ex. F.

Respondent's removal of NIR is in violation of Petitioner's custody rights and is the type of "wrongful" removal proscribed by Article 3 of the Convention.

Petitioner never consented to or acquiesced in NIR's removal to the United States.

## WRONGFUL RETENTION OF THE CHILD BY RESPONDENT

Petitioner has joint rights of custody of NIR under Hungarian law pursuant to Hungarian Civil Code Article 4:175 § 1. *See* Certificate of Law, Ex. F.

NIR's place of habitual residence continues to be Hungary. Any change to NIR's residence requires Petitioner's agreement pursuant to Hungarian Civil Code Article 4:152 §§ 5-6. *See* Certificate of Law, Ex. F.

Petitioner never consented to or acquiesced in NIR's removal or retention in the United States.

Respondent illegally holds NIR in her custody, confinement and restraint in the United States. Respondent has wrongfully refused to permit NIR to return to Hungary. Hungarian law Article 4:167 holds that, absent an agreement between the parents, the court "shall decide... which parent shall have the right of custody." *See* Certificate of Law, Ex. F.

Petitioner believes that there is a strong risk that NIR will continue to be illegally held in custody, confinement and restraint and will suffer from irreparable harm unless an Order to Show Cause is issued.

## PROVISIONAL REMEDIES REQUESTED

This Court "[i]n furtherance of the objectives of . . . the Convention . . . may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition." 42 U.S.C. § 11604(a).

Petitioner prays that an Order be issued, *ex parte*, directing the United States Marshals Service to serve a copy of this Petition on Respondent and, at the same time, take the Respondent's and NIR's passports into custody for safekeeping by the Court, pending a further hearing by this Court.

Pending further hearing in this Court, Petitioner also requests that the Court issue an Order, *ex parte*, prohibiting NIR's removal from the jurisdiction of this Court and setting an expedited hearing on the Petition for Return of Child to Hungary under the Hague Convention.

## RELIEF REQUESTED

Petitioner respectfully requests the following relief:

An Order directing the prompt return of NIR to his habitual residence of Hungary.

The issuance of an *ex parte* Order, directing the United States Marshals Service to serve a copy of this Petition on Respondent and, at the same time, take the Respondent's and NIR's passports into custody for safekeeping by the Court, pending a further hearing by this Court.

The issuance of an *ex parte* Order prohibiting NIR's removal from the jurisdiction of the Court pending the outcome of the Petition for Return of Child to Hungary Under the Hague Convention.

An Order directing Respondent to show cause why NIR has been kept from Petitioner.

An Order directing Respondent to pay the Petitioner's costs and fees; and

Any such further relief as justice and its cause may require.

## NOTICE OF HEARING

Pursuant to 42 U.S.C. § 11603(c), Respondent shall be given notice in accordance with the applicable law governing notice in interstate custody proceedings.

## ATTORNEY'S FEES AND COSTS

(CONVENTION ARTICLE 26 AND/OR 42 U.S.C. § 11607)

Petitioner will submit a copy of all expenditures to date incurred by the Petitioner as a result of the wrongful retention of NIR by the Respondent.

Petitioner will amend this list from time to time to include further expenditures required because of the wrongful retention of NIR.

Petitioner requests that this court award all costs and fees incurred to date as required by 42 U.S.C. § 11607, reserving jurisdiction over further expenses.

Dated: May 1, 2018

CAHILL GORDON & REINDEL LLP

By: _____
David R. Owen
Adam S. Mintz
John R. Spagna
Brent L. Andrus

dowen@cahill.com
amintz@cahill.com
jspagna@cahill.com
bandrus@cahill.com

80 Pine Street
New York, NY 10005
(212) 701-3000

*Attorneys for Petitioner*