18-3627-cv
*Mohacsi v. Rippa*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of December, two thousand nineteen.

PRESENT: ROBERT D. SACK,
PETER W. HALL,
JOSEPH F. BIANCO,
*Circuit Judges.*

-----------------------------------------------------------------------
IN RE: IN THE MATTER OF NIR, MINOR CHILD UNDER THE AGE OF 16

GABOR ZSOLT MOHACSI,
*Petitioner - Appellant,*

v.                                                                  No. 18-3627-cv

ISABELLA SOFIA RIPPA,
*Respondent - Appellee.*
-----------------------------------------------------------------------

FOR PETITIONER-APPELLANT:   BRENT L. ANDRUS (David R. Owen, Adam S. Mintz, Alexandra M. Settelmayer, Tobin Raju, *on the brief*), Cahill Gordon & Reindel LLP, New York, NY.

FOR RESPONDENT-APPELLEE:   JEREMY M. BYLUND, Washington, DC (Gabriel Krimm, Washington, DC, J. Emmett Murphy, Alexander B. McLamb, New York, NY, *on the brief*), King & Spalding LLP.

1

Appeal from a judgment of the United States District Court for the Eastern District of New York (William F. Kuntz, II, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Petitioner-Appellant Gabor Zsolt Mohacsi filed a petition pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention"), implemented by the International Child Abduction Remedies Act, 22 U.S.C. § 9001 *et seq.*, claiming that Respondent-Appellee Isabella Sofia Rippa Herrera[1] wrongfully removed the parties' son, NIR, from Hungary and wrongfully retained him in the United States. Petitioner now appeals from a judgment entered on November 7, 2018, denying that petition. We assume the parties' familiarity with the facts, record of prior proceedings, and arguments on appeal, which we reference only as necessary to explain our decision to affirm.

I.

The following facts were found by the District Court after a two-day evidentiary hearing during which both parties and several experts testified.[2] Petitioner and Respondent met in Hungary and started dating when Petitioner was 38 and Respondent was 19. Soon after Respondent moved in with Petitioner, their relationship began to deteriorate. Respondent learned that Petitioner drank alcohol daily and used ecstasy. Petitioner began verbally abusing Respondent and demanding that she have sex with other men in front of him, which she resisted. One night, Petitioner invited a drug dealer to the house and told

---

[1] After moving to the United States, Respondent married, adding "Herrera" to her name.
[2] The District Court's detailed factual findings are set forth in *Mohácsi v. Rippa*, 346 F. Supp. 3d 295 (E.D.N.Y. 2018), and are summarized here only for orientation and as relevant to the instant appeal.

2

Respondent to have sex with him. Although she refused Petitioner's request about ten times, she eventually relented because she felt that she had nowhere else to go that night. Petitioner videotaped the ensuing sexual encounter and uploaded it to his YouTube channel. The next day, he forced Respondent to watch the video during sex as a "punishment." Sp. App. 11; J. App. 215. The verbal abuse and non-consensual sex continued, eventually accompanied by physical abuse. Petitioner physically assaulted Respondent on more than one occasion, slapping and choking her when he was angry.

The parties broke up in June 2014. At the time, Respondent was pregnant with NIR. After that, Petitioner made publicly available his videos of sexual encounters involving Respondent and sent her screenshots to remind her that she was "nasty and worthless." Sp. App. 14; J. App. 247. He also, on one occasion, threw a rock through the window of the apartment where Respondent was staying and threatened to kill her. Although Petitioner was sentenced to community service as a result of this incident, Respondent was unable to obtain a protective order.[3]

In August 2015, Respondent left Hungary for the United States with NIR, who was then less than a year old. In June 2016, a Hungarian court issued a paternity decision declaring Petitioner to be the father of NIR. Petitioner continued to harass Respondent, sending pornographic images of her to her father and threatening to show the pornographic images to NIR as well.

---

[3] When questioned about Respondent's attempt to obtain police protection, Petitioner testified that he had "a really good relation" with the police commander in the area where they lived. J. App. 196. The police commander brought Petitioner "a very big folder with documents" saying, "look, all these are proofs that this case has to be closed and forgotten." *Id.* at 197.

3

At the evidentiary hearing in the District Court, Respondent presented unrebutted expert testimony from Dr. B.J. Cling, a psychologist specializing in domestic violence, harm against women, child abuse, and sexual harassment. Based on her psychological examination of Respondent, Dr. Cling testified that Respondent was suffering from mild post-traumatic stress disorder related to her relationship with Petitioner. Dr. Cling opined that Petitioner's abuse of Respondent would likely continue and even intensify were Respondent to return to Hungary with NIR and that there was a "high likelihood" that NIR would develop a "psychological disorder should he witness such abuse." Sp. App. 7 (quoting Dr. Cling's written report).[4] Dr. Cling also testified that, statistically speaking, Petitioner was likely to abuse his child directly and that the incidents where Petitioner accosted Respondent when she was holding NIR indicated "a certain disregard of the child." J. App. 405.

To the extent Petitioner and Respondent offered conflicting accounts of events, the District Court credited Respondent's testimony, finding her demeanor believable and her testimony corroborated by the record, while Petitioner was "defensive," "at times aggressive," and sometimes "appeared to be simply lying." Sp. App. 8. The District Court also credited Dr. Cling's testimony.

The District Court determined that Petitioner failed to establish a *prima facie* case of wrongful removal or wrongful retention, and that even if he could establish wrongful removal or wrongful retention, his petition would still be denied because Respondent established the applicability of two independently sufficient defenses. As relevant to this

---

[4] Respondent would presumably have to return to Hungary were NIR to be repatriated because, as Petitioner acknowledges, "NIR will presumably remain in the care of [Respondent]" until a Hungarian court determines a custody arrangement between the two parents. Appellant Br. 45.

4

appeal, the District Court concluded, based on Petitioner's prior history of abuse, Dr. Cling's unrebutted expert testimony, and Petitioner's threat to show NIR pornographic images of his mother, that Respondent established by clear and convincing evidence that NIR would face a "grave risk of harm" if returned to Hungary. *Id.* at 41. With respect to Petitioner's threat, the District Court noted that exposing young children to inappropriate sexual material can constitute psychological abuse. The District Court also determined that the protections available under Hungarian law were insufficient to mitigate the grave risk of harm to NIR given Petitioner's testimony about his relationship with the local police commander and Respondent's inability to obtain a protective order despite making multiple police reports about Petitioner.

II.

"In cases arising under the Convention, a district court's factual determinations are reviewed for clear error." *Blondin v. Dubois*, 238 F.3d 153, 158 (2d Cir. 2001). We review *de novo* the district court's interpretation of the Hague Convention and application of the Hague Convention to the facts. *Id.*

III.

Under Article 13(b) of the Hague Convention, a court is not bound to order the repatriation of a child if "[t]here is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." The establishment of such a risk is an affirmative defense to a claim of wrongful removal or retention under the Hague Convention. *See Souratgar v. Lee*, 720 F.3d 96, 102–03 (2d Cir. 2013). We identify no factual or legal error in the District Court's determination that the

5

repatriation of NIR to Hungary would expose NIR to a grave risk of harm within the meaning of the Hague Convention. We therefore need not reach the issues Petitioner raises with regard to his wrongful removal and wrongful retention claims.

It is true, as Petitioner emphasizes, that "[t]he potential harm to the child must be severe, and the level of risk and danger required to trigger this exception has consistently been held to be very high." *Id.* at 103 (internal quotation marks and alteration omitted). The exception has been established, however, "where the petitioner showed a 'sustained pattern of physical abuse and/or a propensity for violent abuse' that presented an intolerably grave risk to the child." *Id.* at 104 (quoting *Laguna v. Avila*, No. 07–cv–5136 (ENV), 2008 WL 1986253, at *8 (E.D.N.Y. May 7, 2008)). "Evidence of '[p]rior spousal abuse, though not directed at the child, can support the grave risk of harm defense.'" *Id.* (quoting *Rial v. Rijo*, No. 10–cv–1578 (RJH), 2010 WL 1643995, at *2 (S.D.N.Y. Apr. 23, 2010)). Here, the District Court's assessment of grave risk was based not only on Petitioner's abuse of Respondent but also on Dr. Cling's testimony that Petitioner was statistically likely to abuse NIR directly and on Petitioner's threat to show the pornographic images of Respondent to NIR. The credibility of that threat is borne out by the fact that Petitioner has sent such images to other members of Respondent's family.

Petitioner argues that the District Court should not have credited Respondent's "questionable and self-serving testimony." Appellant Br. 38. He asserts that Respondent's account of the abuse she suffered is "exaggerated" and that the sexual activities that Respondent engaged in at Petitioner's request were consensual. *Id.* at 43. We are not persuaded. Petitioner has admitted that he physically abused Respondent, and his assertion

6

that her testimony is exaggerated cannot overcome the District Court's finding that Respondent is credible, and Petitioner is not. "Mindful that the assessment of the credibility of witnesses is peculiarly within the province of the trier of fact and is entitled to considerable deference," *Mackler Prods., Inc. v. Cohen*, 225 F.3d 136, 145 (2d Cir. 2000) (internal quotation marks and alteration omitted), we see no reason to question the District Court's credibility findings in this case.

Petitioner also challenges the District Court's decision to credit Dr. Cling's testimony that Petitioner would likely abuse Respondent and NIR were they to return to Hungary, asserting that it is "improper generalized testimony" because Dr. Cling never examined Petitioner. Appellant Br. 41. The District Court addressed this point, which was made during cross-examination of Dr. Cling, by noting Dr. Cling's explanation that her testimony was based on several psychological risk factors and statistics about abusers. Petitioner cites no authority indicating that it is improper for a district court to rely on a psychologist's testimony if that testimony is based on social science research rather than in-person examination. *Cf. Walsh v. Walsh*, 221 F.3d 204, 220 (1st Cir. 2000) ("[C]redible social science literature establishes that serial spousal abusers are also likely to be child abusers.").

Petitioner asserts that his relationships with his other children are "devoid of any abuse." Appellant Br. 41. He cites Respondent's testimony that Petitioner never abused his other children and a written statement by the mother of those children stating that Petitioner "has never hurt any of his children physically." J. App. 452. There is reason to question the latter evidence: text messages in the record show that Petitioner pressured the mother to make such a statement. *Id.* at 588 ("Write down you bastard that I never laid a finger on my

7

children!"). But even if we accept as true the statements that Petitioner has not abused his other children, we cannot say that the District Court clearly erred in giving greater weight to Dr. Cling's testimony that Petitioner was statistically likely to abuse NIR. *See United States v. Murphy*, 703 F.3d 182, 188 (2d Cir. 2012) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). In any event, Petitioner's relationships with his other children do not bear on whether he will abuse Respondent if she returns to Hungary.

Finally, Petitioner asserts that "Hungary provides ample protection for children and adults from domestic violence and other abuse." Appellant Br. 44. The only support in the record for that proposition is the testimony of Petitioner's Hungarian law expert that Hungary's Child Protection Act provides "different measures for the State to protect children." J. App. 418. That Hungary has such a law does not undermine the District Court's finding, based on the specific circumstances of this case, that the protections available under Hungarian law do not mitigate the risk of harm to NIR.

IV.

We have considered all of Petitioner's remaining arguments and have found in them no basis for reversal. Accordingly, we **AFFIRM** the judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court



8

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit